IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| SAMUEL HARDIN, #257071, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:10-CV-663-MEF |
| | ) | |
| CITY OF TROY PUBLIC WORKS | ) | |
| DEPT., et al.,[1] | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  INTRODUCTION**

In this 42 U.S.C. § 1983 action, Samuel Hardin ["Hardin"], a former state inmate,

asserts that due to the negligence and unconstitutional behavior of the defendants he

suffered injuries to his foot while assigned to a work release job at the City of Troy Public

Works Department.  Specifically, Hardin argues that the defendants were negligent and

acted with deliberate indifference to his safety by allowing him to work on a boom truck

lacking appropriate safety measures and absent issuance of any safety equipment, i.e., steel

toe boots and eye wear, while under the direct supervision of an inexperienced truck

operator.  Hardin further alleges that the defendants violated his due process equal

protection rights.  Hardin names the City of Troy Public Works Department, Vaughn

---

[1]In his complaint, Hardin identifies the individual defendants only as Mr. Von, Mr. May and Mr. Ned.
He also does not provide the correct name of the city department listed as a defendant.  The defendants provide
the full and correct names for the defendants in their special report.  Hardin does not dispute the names submitted
by the defendants.  For purposes of this Recommendation, the court will utilize the correct names of the
defendants.

Daniels, Director of the Public Works Department, Louie May, Supervisor of the Public Works Department, and Ned McLendon, a boom truck operator for the department, as defendants in this cause of action.  Hardin seeks declaratory relief and monetary damages from the defendants for the alleged violations of his constitutional rights.

The defendants filed a special report, accompanied by affidavits, addressing Hardin's claims for relief.  The court informed Hardin that the defendants' special report may, at any time, be treated as a motion for summary judgment and clearly explained to Hardin the proper manner in which to respond to a motion for summary judgment.  *Order of November 2, 2010 - Doc. No. 23*.  Hardin filed a general traverse to the  special report, without supporting evidentiary materials, on November 17, 2010.  *Doc. No. 24*.  Pursuant to the order entered herein on November 2, 2010, the court deems it appropriate to construe the defendants' special report as a motion for summary judgment.  Thus, this case is now pending on the defendants' motion for summary judgment.  Upon consideration of this motion and the evidentiary materials filed in support thereof, the court concludes that the defendants' motion for summary judgment is due to be granted.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258,

1263 (11ᵗʰ  Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule

56(a) ("The court shall grant summary judgment if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter

of law.").[2]  The party moving for summary judgment "always bears the initial responsibility

of informing the district court of the basis for its motion, and identifying those portions of

the [record, including pleadings, discovery materials and affidavits], which it believes

demonstrate the absence of a genuine issue [- now dispute -] of material fact." *Celotex

Corp. v. Catrett*, 477 U.S. 317, 323 (1986).   The movant may meet this burden by

presenting evidence indicating there is no dispute of material fact or by showing that the

nonmoving party has failed to present evidence in support of some element of its case on

which it bears the ultimate burden of proof.  *Id.* at 322-324.

The defendants have met their evidentiary burden and demonstrated the absence of

any genuine dispute of material fact.  Thus, the burden shifts to the plaintiff to establish,

with appropriate evidence beyond the pleadings, that a genuine dispute material to his case

exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11ᵗʰ Cir. 1991); *Celotex*, 477 U.S.

at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or

fails to properly address another party's assertion of fact by [citing to materials in the

---

[2]Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions."  Fed.R.Civ.P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination."  *Id.*  "'Shall' is also restored to express the direction to grant summary judgment."  *Id.*  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, those cases citing prior versions of the rule remain equally applicable to the current rule.

record including affidavits, relevant documents or other materials] the court may ... grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it."). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment.... Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted). Consequently, to survive the defendants' properly supported motion for summary judgment, Hardin is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil Procedure*. "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Id*. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue

of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (A plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("Mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate.).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of*

*the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment.").  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).  To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts....  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show no genuine dispute as to a requisite material fact); *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

Although factual inferences must be viewed in a light most favorable to the

6

nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts,

a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine

dispute of material fact.  *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*,

906 F.2d 667, 670 (11th Cir. 1990).   Thus, the plaintiff's *pro se* status alone does not

mandate this court's disregard of elementary principles of production and proof in a civil

case.  In this case, Hardin fails to demonstrate a requisite genuine dispute of material fact

in order to preclude summary judgment.  *Matsushita*, *supra*.

### III.  FACTS AND ARGUMENTS

Sometime prior to April 27, 2009, Hardin received a job assignment with the Public

Works Department for the City of Troy, Alabama as a contract laborer pursuant to a

contract between the municipality and the Alabama Department of Corrections.  On the day

of the incident at issue, April 27, 2009, May, the department's supervisor, assigned Hardin

to work with McLendon on the boom truck collecting trash.  At this time, McLendon

possessed both Class A and Class B commercial driver's licenses.  *Defendants' Exh. C (Aff.*

*of Ned McLendon) - Doc. No.* 21-3 at 1.  McLendon received training in the operation of

a boom truck and also had extensive experience operating the boom truck for the Public

Works Department.  *Id*.   Prior to the incident with Hardin, McLendon had operated the

boom truck for over ten years with no injuries to anyone working on the truck.  *Id*.  At the

time of assigning Hardin to the boom truck, May advised Hardin "1.  To be sure to stand

clear of the vehicle at all times until Mr. [McLendon] stands down.  2.  To stand clear at

all times of the knuckle boom operation.  3.  Not to come to the truck until told to do so by Mr. [McLendon].  4.  To be sure he had on his safety vest and safety goggles.  5.  To watch for traffic on the highway." *Defendants' Exh. B (Aff. of Louis May) - Doc. No.* 21-2 at 1.

McLendon and Hardin made several stops in the boom truck collecting trash on April 27, 2009 without any problems.  During the trash collection process, McLendon would, when necessary, release the two outriggers on the boom truck, one on either side of the vehicle, to stabilize the truck.  The outriggers are operated via a hydraulics system which provides for a steady and uniform lowering/raising of the outriggers and emanates a distinct noise when in use.  On the trash collection stop at issue, McLendon "exited the cab [of the truck] and went to the operator stand which is behind the driver's side so [he] could operate the boom.  Plaintiff exited the passenger side and walked around the front of the truck.  The last time [McLendon] saw him [Hardin] was standing on the driver's side of the truck.  Because of the way the boom stand is situated, [McLendon] was unable to see across to the passenger side [and Hardin at no time advised McLendon of his position in relation to the truck or his proximity to the outriggers nor did he stand clear of the truck].  [McLendon] was releasing the two outriggers [for lowering and as they descended to the ground he] ... heard somebody say 'Hey! Hey! Hey!'.  [McLendon] leaned back so [he] could see between the [operator] stand and the back of the truck and saw Plaintiff. The outrigger on [the passenger side] had apparently landed on his foot.  [McLendon

immediately] released the hydraulics so the outriggers would lift and release [Plaintiff's] foot.   [McLendon] asked the Plaintiff what he was doing [out of the truck near the outrigger] and he said he was trying to get a broom." *Defendants' Exh. C (Aff. of Ned McLendon) - Doc. No.* 21-3 at 1-2.  McLendon admonished Hardin for "not wait[ing] until I was through lowering the outriggers" to approach the truck.  *Id.* at 2.  Hardin suffered an injury to his foot when he exited the boom truck, positioned himself outside of McLendon's line of sight in close proximity to the truck with his foot in the direct path of the outrigger and failed to remove his foot from the path of the outrigger as it lowered into position.  This incident marked the first personal injury suffered on the boom truck during the ten years McLendon operated the truck.  *Id.* at 1.

Hardin alleges that the defendants were negligent and acted with deliberate indifference to his safety due to the "inexperience of the [truck] operator and no training nor safety measure, nor safety equipment issued to the plaintiff." *Complaint - Doc. No. 1* at 2.  The defendants adamantly deny the allegations made against them in the complaint and present proper supporting evidentiary materials in support of their arguments.

In his traverse to the defendants' report, Hardin changes course and concedes that the defendants provided him various items of safety equipment, including safety goggles and a safety vest, but argues they did not provide him "steel toe boots nor [a] hard hat." *Doc. No. 24* at 1.  The assertion made by Hardin in the traverse with respect to the

9

provision of safety equipment is in direct contradiction to the statement contained in the complaint in which Hardin avers that the defendants failed to furnish him any safety equipment, including safety eye wear. *Complaint - Doc. No. 1* at 1. Hardin presents no explanation for the discrepancy of the statement in his complaint and the assertion contained in his subsequent traverse. This court may therefore disregard Hardin's traverse filed solely for the purpose of opposing summary judgment as it contains information which directly contradicts a statement contained in his complaint. *See Van T. Junkins and Associates v. U. S. Industries, Inc.*, 736 F.2d 656, 657 (11th Cir. 1984); *see also McCormick v. Ft. Lauderdale*, 333 F.3d 1234,1240 n.7 (11th Cir. 2003) (contradictory statement submitted solely to defeat summary judgment may be disregarded by the court). Moreover, Hardin's unsworn traverse does not contain admissible supporting evidence sufficient to withstand the defendants' properly supported motion for summary judgment. *Holifield*, 115 F.3d at 1564 n.6.

## IV.  DISCUSSION

### A.  Negligence Claim

Hardin complains that the defendants were negligent in their supervision and training of him which caused him to suffer injuries to his foot. *Complaint - Doc. No. 1* at 2. The law is well settled that the Constitution is not implicated by negligent acts of officials. *Daniels v. Williams*, 474 U.S. 327 (1986); *Estelle v. Gamble*, 429 U.S. 97, 106

(1976) (mere negligence does not violate the Eighth Amendment); *Kelley*, 400 F.3d at 1285 (negligence insufficient to establish a constitutional violation); *Popham v. City of Talladega*, 908 F.2d 1561, 1563 (11th Cir. 1990), citing *Molton v. City of Cleveland,* 839 F.2d 240, 243 (6th Cir. 1988), *cert. denied,* 489 U.S. 1068, 109 S.Ct. 1345, 103 L.Ed.2d 814 (1989) (plaintiff showed mere negligence which does not establish a § 1983 claim).

### B.  Fourteenth Amendment Claims

Hardin presents purely conclusory allegations regarding purported violations of his due process and equal protection rights as protected by the Fourteenth Amendment. *Complaint - Doc. No. 1* at 3.  Neither of these alleged violations entitle Hardin to any relief.

Initially, the court finds that the complaint fails to set forth any claims which implicate the protections of the Due Process Clause of the Fourteenth Amendment.  *Cf. Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (merely labeling a claim as a due process violation is insufficient).   In addition, Hardin fails to present a claim of discrimination cognizable under the Equal Protection Clause.

"Despite the tendency of all rights 'to declare themselves absolute to their logical extreme,' there are obviously limits beyond which the equal protection analysis may not be pressed....  The Fourteenth Amendment 'does not require absolute equality or precisely

equal advantages,'... nor does it require the State to 'equalize [prison] conditions.'" *Ross v. Moffitt*, 417 U.S. 600, 611-612 (1974); *Hammond v. Auburn University*, 669 F.Supp. 1555, 1563 (M.D. Ala. 1987) ("The Equal Protection Clause of the Fourteenth Amendment does not require all persons to be treated either identically or equally.").  To proceed on a claim under the Equal Protection Clause, "a prisoner must [at a minimum] demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis. *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001); *Damiano v. Florida Parole and Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir. 1986)." *Sweet v. Secretary, Department of Corrections*, 467 F.3d 1311, 1318-1319 (11th Cir. 2006).  "[O]fficial action will not be held unconstitutional solely because it results in a ... disproportionate impact....  Proof of ... discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 264-265 (1977).  "'Discriminatory purpose' ... implies more than intent as volition or intent as awareness of consequences.  It implies that the decision maker ... selected ... a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979) (footnote and citation omitted); *see also Hernandez v. New York*, 500

U.S. 352, 359 (1991).  Evidence which merely indicates disparity of treatment or even arbitrary administration of state powers, rather than instances of purposeful or invidious discrimination, is insufficient to show discriminatory intent.  *McKleskey v. Kemp*, 481 U.S. 279, 292, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987).

Since this case is before the court on a properly supported motion for summary judgment from the defendants, Hardin bears the burden of producing evidence which would be admissible at trial sufficient to show that the defendants provided more favorable treatment to other similarly situated individuals and acted in this manner due to intentional discrimination.  *Celotex*, 477 U.S. at 322-324; *Anderson*, 477 U.S. at 249 (to preclude summary judgment, plaintiff must present significant probative evidence showing defendant provided more favorable treatment to similarly situated persons and did so as the result of intentional discrimination); *E & T Realty Company v. Strickland*, 830 F.2d 1107, 1114 (11th Cir. 1987), *cert. denied*, 485 U.S. 961 (1988) (Intentional discrimination on the part of the defendant in providing the challenged disparate treatment is required.  "Mere error or mistake in judgment" or "[e]ven arbitrary administration of a statute, without purposeful discrimination, does not violate the equal protection clause.").  The plaintiff cannot rest on conclusory allegations of a constitutional violation to defeat summary judgment nor is "[t]he mere existence of a scintilla of evidence in support of [his] position" sufficient to avoid summary judgment.  *Anderson*, 477 U.S. at 252.

13

Hardin fails to identify any similarly situated inmate who received differential favorable treatment from the defendants.   Thus, Hardin's "equal protection claim necessarily fails first because he has not shown that he was treated differently from other, similarly situated prisoners."  *Sweet*, 467 F.3d at 1319.  This assertion likewise provides no basis for relief

> because [Hardin] has not alleged ... that he was treated differently on account of some form of ***invidious discrimination*** tied to a constitutionally protected interest.  He has not even claimed that he was treated differently from others because of race, religion, or national origin [and actually concedes such is not the case].  *See Snowden v. Hughes,* 321 U.S. 1, 8, 64 S.Ct. 397, 88 L.Ed. 497 (1944) ("The unlawful administration ... of a state statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination."); *McQueary v. Blodgett,* 924 F.2d 829, 835 (9th Cir.1991) (rejecting a claim that a state prisoner's equal protection rights were violated because he received a longer sentence than some other prisoners and holding that "a mere demonstration of inequality is not enough; the Constitution does not require ***identical*** treatment.  There must be an allegation of invidiousness or illegitimacy in the statutory scheme before a cognizable claim arises:  it is a settled rule that the Fourteenth Amendment guarantees equal laws, not equal results."  (internal quotation marks omitted)); *see also Cruz v. Skelton,* 543 F.2d 86, 92-93 (5th Cir.1976) (affirming dismissal of prisoner's equal protection claim because there was no allegation of "'invidious discrimination' based on such considerations as race, religion, national origin, or poverty").

*Sweet*, 467 F.3d at 1319 (emphasis in original).  Thus, Hardin is due no relief on his equal protection claim.

### C.  The City of Troy Public Works Department

The "capacity to sue or be sued shall be determined by the law of the state in which

14

the district court is held...."  Rule 17(b), *Federal Rules of Civil Procedure*.  The City of

Troy Public Works Department is a department operated by the City of Troy, Alabama.

Under Alabama law, the public works department is "not a separate entity" from the City

of Troy.  *Stabler v. City of Mobile*, 844 So.2d 555, 563 (Ala.2002).  Thus, the City of Troy

Public Works Department "is not a legal entity ... subject to suit or liability under section

1983."  *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992).  In light of the foregoing,

the court concludes that the claims against this defendant are due to be dismissed under 28

U.S.C. § 1915(e)(2)(B)(i).  *Id.*

### D.  Director Vaughn Daniels and the City of Troy

1.  <u>Respondeat Superior</u>.  To the extent Hardin seeks to hold the Director of the

Public Works Department, Vaughn Daniels, or the City of Troy liable under the theory of

respondeat superior or on the basis of vicarious liability for actions of other individuals,

he is entitled to no relief as "neither respondeat superior nor vicarious liability exists under

§ 1983."  *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092,

1116 (11th Cir. 2005); *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S.Ct. 1937, 1948 (2009)

(The law is well settled "that Government officials may not be held liable for the

unconstitutional conduct of their subordinates under the theory of *respondeat superior* [or

vicarious liability].... *Robertson v. Sichel,* 127 U.S. 507, 515–516, 8 S.Ct. 1286, 3 L.Ed.

203 (1888) ('A public officer or agent is not responsible for the misfeasances or position

wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties'). Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (no liability under § 1983 on the basis of respondeat superior or vicarious liability); *Marsh v. Butler County*, 268 F.3d 1014, 1035 (11th Cir. 2001) (A defendant "can have no respondeat superior liability for a section 1983 claim."); *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir.2003) (concluding supervisory officials are not liable on the basis of respondeat superior or vicarious liability); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999), citing *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994) (42 U.S.C. § 1983 does not allow a plaintiff to hold supervisory officials liable for the actions of their subordinates under either a theory of respondeat superior or vicarious liability.).

2. <u>Policies and Customs</u>. Hardin alleges that the policies and customs regarding safety measures adopted by the City of Troy Public Works Department subjected him to deliberate indifference thereby causing him to suffer injuries to his foot. As previously determined, Hardin cannot predicate liability for alleged constitutional violations on a theory of respondeat superior or vicarious liability. Thus, defendant Vaughn and the City of Troy can be held liable for the injuries suffered by Hardin only if their actions bear a

causal relationship to the purported violations of Hardin's constitutional rights. To establish the requisite causal connection and therefore avoid entry of summary judgment in favor of these defendants, Hardin must present sufficient evidence which would be admissible at trial of either "a history of widespread abuse [that] put[] [the defendants] on notice of the need to correct the alleged deprivation, and [they] fail[ed] to do so...." or "a ... custom or policy [that] result[ed] in deliberate indifference to constitutional rights, or ... facts [that] support an inference that [defendant Vaughn] directed the [employees in the Public Works Department] to act unlawfully, or knew that [the employees] would act unlawfully and failed to stop them from doing so." *Cottone*, 326 F.3d at 1360 (internal punctuation and citations omitted). A thorough review of the pleadings and evidentiary materials submitted in this case demonstrates that Hadin has failed to meet this burden.

As is clear from the foregoing, liability may be imposed upon Daniels for the actions of his subordinates or upon the City of Troy for one of its departments only if the policies or procedures of the municipality are unconstitutional or constitute the "moving force" behind the constitutional violations set forth in this case. *Monell,* 436 U.S. at 694-95; *Oklahoma City v. Tuttle*, 471 U.S. 808, 820 (1985). "A plaintiff must prove causation by demonstrating that the municipality's '***deliberate*** conduct ... was the "moving force" behind his injury....' [*Board of County Commissioners v. Brown*, 520 U.S. 397, 404, 117 S.Ct. 1382 (1997)] (emphasis in the original)." *McDowell v. Brown*, 392 F.3d 1283, 1292 (11th

Cir. 2004).  The law is well settled that only when a "policy or custom" of the defendants inflicts the injury does § 1983 liability exist.  *City of Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).  The plaintiff must show that the policy or custom composed the root cause of the constitutional violation.  *Tuttle*, 471 U.S. at 820.  Thus, not only must there be some degree of "fault" on the part of the defendants in establishing the policy or tolerating the custom, but there must also be a causal link between the custom or policy and the constitutional deprivation.  *Id*. at 823.  Thus, this court must first determine "whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation."  *Id*. 489 U.S. at 385, 109 S.Ct. 1197.  Based on the record in this case, the court concludes that there is no such causal link.

Hardin does not identify nor does he proffer evidence of any policy or custom of the City of Troy which establishes the necessary causal connection.  It is impermissible to "'infer a policy merely because harm resulted from some interaction with a governmental entity.'  *Colle v. Brazos County, Texas*, 981 F.2d 237, 245 (5th Cir. 1993)."  *McDowell*, 392 F.3d at 1293-1294.  Consequently, the record is devoid of any evidence that a policy or custom of the defendants caused the alleged constitutional violations.  Moreover, the record is devoid of evidence indicating obvious, flagrant or rampant safety violations of a continuing nature in the face of which Daniels or the City of Troy failed to take corrective action.  Summary judgment is therefore due to be granted in favor of Director

Daniels and the City of Troy.

### E.  Eighth Amendment Claims

1.  <u>Deliberate Indifference to Safety</u>.  Hardin asserts that defendants May and McLendon failed to properly train and supervise him regarding his assignment to work on the boom truck.  It is clear that this assertion presents a claim of deliberate indifference to the plaintiff's safety arising under the Eighth Amendment.  The defendants adamantly deny acting with either callous disregard or deliberate indifference to Hardin's safety.  The evidentiary materials submitted by the defendants support their assertions.

Officials responsible for prison inmates may be held liable under the Eighth Amendment for acting with "deliberate indifference" to an inmate's health or safety when the official knows the inmate faces "a substantial risk of serious harm" and with such knowledge disregards the risk by failing to take reasonable measures to abate it.  *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).  A constitutional violation occurs only "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not 'respond[] reasonably to the risk.'  *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 1982-83, 128 L.Ed.2d 811 (1994).  A plaintiff must also show that the constitutional violation caused his injuries."  *Marsh*, 268 F.3d at  1028.

The law is well settled that both objective and subjective elements are necessary to establish an Eighth Amendment violation.  With respect to the requisite objective elements

19

of a deliberate indifference claim, an inmate must first show "an objectively substantial risk of serious harm ... exist[ed].  Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner." *Marsh*, 268 F.3d 1028-1029.  As to the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference....  The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'  ... *[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment*."  *Farmer*, 511 U.S. at 837-838 (emphasis added); *Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) (citing *Farmer*, 511 U.S. at 838) ("Proof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same).  The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety....  It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock."  *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (emphasis added).

20

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'" *Farmer*, 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991).... Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists - and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003). "The known risk of injury must be a strong likelihood, rather than a mere possibility before a [state official's] failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (citations and internal quotations omitted). Thus, "[m]erely negligent failure to protect an inmate ... does not justify liability under section 1983...." *Id*.

Pursuant to the aforementioned criteria, Hardin is "required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation[]" in order to survive summary judgment on his deliberate indifference claim against defendants May and McLendon. *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995); *Farmer*, 511 U.S. at 837-838 (To circumvent entry of summary judgment on a properly supported motion, plaintiff must produce sufficient evidence which demonstrates (1) an objectively substantial risk of serious harm; (2) a subjective awareness of this risk on the part of the defendants; (3) the defendants responded to such risk in an objectively unreasonable manner; and (4) the

21

actions/omissions of the defendants caused his injuries); *Marsh*, 268 F.3d at 1028-1029 (same).

A thorough review of all the documents filed in this case demonstrates that the injuries suffered by Hardin occurred when, despite engagement of the hydraulic system to lower the outriggers and the concomitant noise of the descending outrigger, Hardin positioned his foot under the outrigger as the outrigger was lowered into position. This constituted a purely random act by Hardin that could not be anticipated or prevented by the defendants. While it is unfortunate that Hardin suffered injuries to his foot when working on the boom truck for the City of Troy Public Works Department, the record is completely devoid of evidence that his injuries occurred due to any deliberate indifference or reckless disregard to his safety by defendants May and McLendon. Hardin presents no evidence of an objectively substantial risk of serious harm nor is there any evidence demonstrating an actual, subjective awareness of a substantial risk of such harm by these defendants, each of which is a required element of an Eighth Amendment claim. Neither an assertion that the defendants should have known of potential dangers/deficiencies in operation of the boom truck nor the mere possibility that Hardin could be injured while working on the truck is enough to demonstrate a genuine issue regarding deliberate indifference on the part of defendants May and McLendon. *Brown*, 894 F.2d 1537; *Carter*, 352 F.3d at 1350 (footnote omitted) ("Plaintiff has failed to establish that the Defendant[s] had a subjective

awareness of a substantial risk of serious physical [harm] to Plaintiff; thus, Plaintiff has failed to establish a required element of this claim.  When viewing the evidence most favorably toward Plaintiff, a claim for deliberate indifference has not been established...."). Consequently, summary judgment is due to be granted in favor of defendants May and McLendon on the deliberate indifference claim.  *Id.*

2.  <u>Cruel and Unusual Punishment</u>.  With respect to Hardin's conclusory allegation that the defendants subjected him to cruel and unusual punishment, he is likewise entitled to no relief as there is no evidence of obduracy or wantonness on the part of the defendants. *Whitley*, 475 U.S. at 319 (emphasis added) (To establish a claim cognizable under the Cruel and Unusual Punishments Clause of the Eighth Amendment, the actions made the basis of the complaint "must involve more than ordinary lack of due care for the prisoner's interests or safety....  It is ***obduracy and wantonness, not inadvertence or error in good faith***, that characterize the [prohibited] conduct."); *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) (wanton behavior necessary element of cruel and unusual punishment claim).  In light of the foregoing, defendants May and McLendon are entitled to summary judgment on this claim.

### F.  Supplemental Jurisdiction - State Law Claims

To the extent Hardin seeks to proceed on pendent state law claims regarding negligence and workman's compensation, he is entitled to no relief.  Review of any

pendent state law claim is only appropriate upon exercise of this court's supplemental

jurisdiction.  In the posture of this case, however, the court deems that exercise of such

jurisdiction over Hardin's referenced state law claims is inappropriate.

> Two factors determine whether state law claims lacking an independent
> federal jurisdictional basis can be heard in federal court with a federal claim
> over which the court has jurisdiction.  To exercise pendent jurisdiction [or
> what is now identified as supplemental jurisdiction] over state law claims not
> otherwise cognizable in federal court, "the court must have jurisdiction over
> a substantial federal claim and the federal and state claims must derive from
> a 'common nucleus of operative fact.'"  *Jackson v. Stinchcomb,* 635 F.2d
> 462, 470 (5th Cir.1981) (quoting *United Mine Workers v. Gibbs,* 383 U.S.
> 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)).  *See generally* C. Wright, A.
> Miller & E. Cooper, *Federal Practice and Procedure: Jurisdiction* § 3567
> pp. 443-47 (1975).

*L.A. Draper and Son v. Wheelabrator Frye, Inc.*, 735 F.2d 414, 427 (11th Cir. 1984).  The

exercise of supplemental jurisdiction is completely discretionary.  *United Mine Workers*

*v. Gibbs*, 383 U.S. 715 (1966).  "If the federal claims are dismissed prior to trial, *Gibbs*

strongly encourages or even requires dismissal of the state claims." *L.A. Draper and Son*,

735 F.2d at 428.

In view of the resolution of the federal claims presented by Hardin, the court

concludes that the pendent state claims referencing negligence and workman's

compensation are due to be dismissed.  *Gibbs*, 383 U.S. at 726 (if the federal claims are

dismissed prior to trial, the state claims should be dismissed as well); *see also Ray v.*

*Tennessee Valley Authority*, 677 F.2d 818 (11th Cir. 1982).  The court therefore declines

to exercise supplemental jurisdiction over the pendent state law claims presented in this cause of action and makes no determination with respect to the merits of these claims.

## V.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motion for summary judgment be GRANTED.

2.  This case be dismissed with prejudice.

3.  The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that on or before September 6, 2013 the parties may file objections to the  Recommendation.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v.*

*Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 19th day of August, 2013.

/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE